# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA  :

     v.                    :   CRIMINAL NO. 01-005-02

DESMOND WRIGHT        :

## GOVERNMENT'S RESPONSE TO MOTION TO CORRECT SENTENCE UNDER 28 U.S.C. § 2255

Defendant Desmond Wright is serving a 750-month sentence (62.5 years) for a spectacular series of crimes that occurred on November 24, 2000. At this time, he challenges his conviction on one of the two 924(c) charges of which he was convicted. His argument is without merit.

## I.  Factual Background.

On November 24, 2000 – the Friday during Thanksgiving weekend – Wright and two accomplices set fire to a school, robbed a bank, and engaged in a high-speed chase that included a shoot-out with the police.

That morning, defendants Gary Ramsey, Desmond Wright, and John McClure set fire to the East Pikeland Elementary School in Chester County, which was in recess for the Thanksgiving weekend. The plan was to divert authorities while the defendants proceeded to rob a nearby bank.

Pennsylvania State Police fire marshal investigators later concluded that gasoline had been used as an accelerant. The fire damage to the elementary

school was approximately $560,000. A second grade classroom on the first floor was completely destroyed by the fire, with further damage to that entire wing of the school, which had to be closed. During the fire, a firefighter was injured by glass when, in the course of fighting the fire, he broke a window to fight the fire. He received a cut to his hand, and was treated and released from the hospital after receiving four stitches.

While law enforcement was responding to the fire, the defendants proceeded to rob the First Union Bank branch located in the Valley Forge Mall in East Pikeland Township, which is a short drive from the school. They entered the bank, telling those inside the bank that they would kill everyone if anyone called the police or hit an alarm. The robbers ordered approximately five employees and seven customers to the ground at point of gun, later taking two at gunpoint into the vault. McClure stood near the entrance, and Wright jumped over the counter and started taking money from the tellers' drawers. Ramsey took bank employees at gunpoint to access the vault. They stole $275,920, then fled from the bank and ran to a white van outside.

After departing in the van, they stopped and split up, with Ramsey getting into a red Taurus, and Wright and McClure getting into a tan Cadillac. (A bystander outside the bank had followed them and reported to police by cell phone what was transpiring.) A responding police officer soon took up the chase of the Cadillac, and signaled it to pull over. The driver, co-defendant Donna

Thomas, complied and pulled over to the side of the road in front of a car dealership. PSR ¶ 19.

Police Officer Barrett, of the Phoenixville Police Department, ordered Thomas to turn off the car and get out of the vehicle. Corporal Nemic arrived and pulled his car up behind Barrett's, and Officer Sousa arrived and pulled his car in front of the Cadillac, blocking its forward motion. Thomas complied with the order to get out of the vehicle and was told to sit on the curb to the rear of the Cadillac. The police could see the two other men in the car, McClure in the front passenger seat and Wright in the rear. Both Barrett and Nemic ordered the two to show their hands in the air and not to move. They did not comply. Instead, McClure slid into the driver's seat of the vehicle and started the car. Police ordered McClure to stop. Barrett saw Wright pull a handgun and point it at him. McClure started driving the car forward. Barrett yelled "gun" as a warning to the other officers and fired at Wright in the back seat. McClure drove the car up onto the sidewalk directly at Sousa. Sousa fired into the front tire to try to stop McClure. Wright and Officer Barrett continued to trade gunfire. McClure drove around the police cars and sped off at a high rate of speed. In the gun battle, Cpl. Nemic suffered an injury to his right eye[1] and right ear.

Officers followed the Cadillac east on Route 23 as it sped at approximately 50 to 55 miles per hour on the one-lane, heavily trafficked road. Officers saw

---

[1] It was later determined that he suffered a detached retina in his right eye.

Wright sit up in the back seat, appear to take aim, and fire. Over the 4½ mile chase, Wright took aim and fired at Barrett on more than one occasion. At some point during this chase, McClure received an in-and-out gunshot wound to his arm.[2] PSR ¶ 21. At times in the chase, Barrett was so close that his car was literally on the bumper of the Cadillac driven by McClure. Cpl. Nemic, who was just behind Barrett, could hear and see some of Wright's shots ricocheting off the road. The Cadillac sped through heavy traffic, sometimes veering into the path of oncoming vehicles. The flight continued down Route 23 into Schuylkill Township and ended when the Cadillac, two of its tires flat, crashed into a guardrail of a small road off of Route 23, near the Valley Forge Fire Department.

After the Cadillac crashed, both McClure and Wright ran out of the car, Wright still carrying a semi-automatic weapon. Wright and McClure attempted to force their way into three occupied vehicles that were stopped because of the police activity on the road, with Wright pointing his gun directly at the driver of one vehicle. Barrett, who saw Wright pointing the gun at the driver, shot at Wright. Wright was wounded in the rear[3] and ran into a wooded area, where he was finally apprehended by Barrett and another officer. Cpl. Nemic, who caught up to McClure, struggled with McClure while others chased Wright. McClure got on top of the already injured Cpl. Nemic and tried to get Nemic's gun from his

---

[2] He was later treated and released at the hospital.

[3] Wright was treated at MCP Hospital and remained hospitalized for about one week.

- 4 -

holster. Barrett, who had secured Wright, returned, saw McClure trying to get Cpl. Nemic's gun, and went to this aid. McClure only stopped struggling when he saw Barrett with his gun pointed at him.

The firearm fired by appellant Wright was a Beretta 9 mm., with one round of ammunition remaining. It was recovered from the ground where he apparently dropped it near the edge of the woods.[4] Another firearm, a Smith and Wesson .38 caliber revolver, loaded with three rounds, was recovered from the front seat of the Cadillac.[5]

A cloth bag with $57,300 in bank funds was recovered from the back seat.[6] Four black gloves were recovered from the rear seat floor, driver's side, on the floor of the Cadillac. Three of the four later tested positive for the presence of gasoline. Additional clothing worn during the robbery was recovered from the Cadillac - two hooded black sweatshirts, a black face mask, a black knit cap, a black bandana, and two plastic gloves.

A hand-drawn map of the interior of the bank was recovered from the pocket of McClure. Later testing of the map for fingerprints revealed two

---

[4]  Bank photographs show that this was the firearm possessed by McClure during the bank robbery.

[5]  Bank photographs show that this was the firearm possessed by Wright during the bank robbery.

[6]  The larger portion of the money was taken by Ramsey from the vault and disappeared with him. That amount was approximately $218,600. A portion of that money was later recovered by the FBI from Ramsey's girlfriend and co-conspirator.

fingerprints of Wright, three fingerprints of McClure, and two fingerprints of

Ramsey, along with an unidentified print. Later handwriting analysis of the

writing on the map determined that it was authored by April Knight, Ramsey's

girlfriend and co-conspirator. Eleven spent bullet casings from the 9 mm. were

recovered from inside the vehicle. Ballistics analysis of a bullet later found lodged

in a police car light bar determined that it had been fired from the semiautomatic

wielded by Wright in the firefight with police.

## II.   Procedural History.

Wright was charged in a third superseding indictment (docket no. 88)

with: conspiracy to commit armed bank robbery, in violation of 18 U.S.C. § 371

(Count One); armed bank robbery, and aiding and abetting the same, in violation

of 18 U.S.C. §§ 2113(d) and 2 (Count Two); using, carrying, and discharging a

firearm, and aiding and abetting the same, during and in relation to the armed

bank robbery, in violation of 18 U.S.C. §§ 924(c)(1)(A)(iii) and 2 (Count Four);

using fire, and aiding and abetting the same, to commit a felony, that is, the

conspiracy and armed bank robbery charged in Counts 1 and 2, in violation of 18

U.S.C. §§ 844(h)(1) and 2 (Count Five); malicious destruction, and aiding and

abetting the same, of a building involved in interstate commerce, in violation of

18 U.S.C. §§ 844(i) and 2 (Count Six); conspiracy to carjack, in violation of 18

U.S.C. § 371 (Count Seven); attempted carjacking, in violation of 18 U.S.C. § 2119

(Count Eight); using, carrying, and brandishing a firearm, and aiding and

abetting the same, during and in relation to the conspiracy to carjack, in violation

of 18 U.S.C. § 924(c)(1)(A)(ii) and 2 (Count Nine); and possession of firearms by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) (Count Ten).

On the day of trial, October 9, 2001, Wright pled guilty to all charges pursuant to a written plea agreement. On the eve of sentencing, January 8, 2002, Wright filed a motion to withdraw his guilty plea. On January 9, 2002, the Court denied his motion to withdraw the guilty plea after a hearing and imposed a sentence at the bottom of the guideline range followed by mandatory consecutive sentences on the two 924(c) charges, for a total sentence of 750 months' imprisonment, a term of supervised release of five years, restitution of $685,000 (owed jointly and severally by his four co-defendants), and a special assessment of $900.

On August 15, 2003, this Court denied Wright's first 2255 motion, after a hearing. Then, on June 19, 2016 (docket no. 438), the Defenders Association filed a second 2255 motion on his behalf, challenging his 924(c) convictions based on the decision in *Johnson v. United States*, 576 U.S. 591 (2015).

On August 27, 2019, the Third Circuit approved the filing of the successive 2255 motion. Then, on June 11, 2020 (docket no. 459), Wright filed a pro se letter suggesting that he wished to amend his 2255 motion to add a claim based on *Rehaif* v. *United States*, 139 S. Ct. 2191 (2019). The Court afforded counsel time to file an amended petition. On August 26, 2020 (docket no. 476), counsel filed a statement withdrawing the 2255 motion entirely. Then on August 28, 2020 (docket no. 477), counsel filed pleadings stating that Wright in fact wishes to

pursue 2255 relief on a single claim, that the 924(c) conviction in Count Nine, on which a 25-year consecutive sentence was imposed, is invalid. The government responds to that claim here.[7]

## III.   Discussion.

Section 924(c), as applied here, required a mandatory minimum consecutive sentence for "any person who, during and in relation to any crime of violence . . . uses or carries a firearm," The statute defines a "crime of violence" as "an offense that is a felony" and—

(A)   has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(B)   that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3). In *United States v. Davis*, 139 S. Ct. 2319 (2019), the Supreme Court invalidated subsection (B), the so-called "residual clause," as

---

[7] The government does not object to the permissibility or timeliness of Wright's amended claim, which falls within the Third Circuit's authorization.

The *Rehaif* claim is not before the Court. Counsel essentially withdrew it, and the Third Circuit never authorized it anyway. In fact, the Court of Appeals has held that a claim under *Rehaif* may not be presented in a second or successive 2255 motion. In *In re Sampson*, 954 F.3d 159 (3d Cir. 2020). This is of no moment here, as the *Rehaif* issue only concerns the 922(g) conviction in Count Ten, and Wright received a fully concurrent sentence on that count that does not affect his overall term of imprisonment. *See Gardner v. Warden Lewisburg USP*, 845 F.3d 99, 104 (3d Cir. 2017) (under the "concurrent sentence doctrine," a habeas court need not consider a challenge to a count on which a term of imprisonment was imposed that runs concurrently to equal or higher sentences on other valid counts).

unconstitutionally vague, meaning that a predicate crime of violence may now

qualify only under subsection (A), the "elements clause."

Application of the elements clause requires a categorical approach, in

which the actual facts of the crime do not matter, and the statute does not qualify

if it may be violated in any instance without the use, attempted use, or threatened

use of physical force. *See, e.g., United States v. Dahl,* 833 F.3d 345, 350 (3d Cir.

2016).

Wright properly does not challenge his 924(c) conviction under Count

Four, that was predicated on the conspiracy to commit bank robbery charged in

Count One, and the armed bank robbery charged in Count Two. The Third Circuit

has held that armed bank robbery, in violation of Section 2113(d), continues to

qualify as a 924(c) crime of violence under the elements clause. *United States v.*

*Johnson,* 899 F.3d 191, 202-04 (3d Cir. 2018). While the 924(c) charge in Count

Four alleged that the predicate crime of violence was *both* conspiracy to commit

bank robbery and a specific substantive charge of armed bank robbery, that is not

relevant. Wright pled guilty to both of those offenses. In this circumstance, the

Third Circuit held, it is irrelevant that the 924(c) count referred to a conspiracy

charge, as the 924(c) charge was squarely grounded on a substantive charge as

well of which the defendant was convicted. The issue was resolved in *United*

*States v. Wilson*, 960 F.3d 136, 151 (3d Cir. 2020), which reaffirmed that armed

bank robbery is a crime of violence under Section 924(c), and explained that it is

irrelevant that the court instructed a jury that either conspiracy or the substantive offense could be the predicate, as the jury convicted on both.

Wright does challenge the 924(c) conviction in Count Nine. It alleged that the predicate crime of violence was: "the conspiracy to carjack, as charged against defendant DESMOND WRIGHT and co-conspirator John McClure in Count Seven of this Indictment and the attempted carjacking, as charged against defendant DESMOND WRIGHT in Count Eight of this Indictment."

Thus, as Wright recognizes, the dispositive question with regard to Count Nine is whether attempted carjacking, in violation of 18 U.S.C. § 2119, continues to qualify as a 924(c) predicate "crime of violence" under the elements clause.

There is no question that the substantive crime of carjacking is categorically a "crime of violence" under Section 924(c). The carjacking statute applies to "[w]hoever, with the intent to cause death or serious bodily harm takes a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by force and violence or by intimidation, or attempts to do so . . . ." 18 U.S.C. § 2119. This statute requires as an element "force and violence or . . . intimidation."

In *United States v. Wilson*, 880 F.3d 80 (3d Cir. 2018), the Court addressed precisely the same elements that appear in the bank robbery statute, 18 U.S.C. § 2113(a), and held that bank robbery qualifies as a "crime of violence" under the similar elements clause that appears in U.S.S.G. § 4B1.2(a), without the need for any residual clause. The Third Circuit explained that "intimidation," the

- 10 -

least of the acts required, involves putting a person in fear of physical injury, and that involves the "use, attempted use, or threatened use of force against the person or property of another," satisfying the elements clause.[8] *Wilson*, 880 F.3d at 84-85. Subsequently, in *United States v. Johnson,* 899 F.3d 191, 202-04 (3d Cir. 2018), the Court relied on *Wilson* in applying the elements clause of Section 924(c), the provision at issue here, and holding that armed bank robbery, in violation of 18 U.S.C. § 2113(d), is a "crime of violence" under the elements clause of Section 924(c) for the same reasons stated in *Wilson*. Those decisions necessarily resolve the status of carjacking in violation of Section 2119, which presents the same elements of force, violence, or intimidation stated in the bank robbery provision.

Consistently, every Circuit to address whether carjacking is a 924(c) crime of violence under the elements clause has confirmed that carjacking qualifies, relying on the identical interpretations of the bank robbery statute on which the carjacking statute is based. *See United States v. Evans,* 848 F.3d 242 (4th Cir. 2017); *United States v. Jones*, 854 F.3d 737, 740-41 (5th Cir. 2017); *United States v. Jackson*, 918 F.3d 467, 486 (6th Cir. 2019); *Estell v. United States*, 924 F.3d

---

[8]  It has long been settled that an element of the infliction or threat of physical injury amounts to a requirement of use or threat of physical force, for purposes of the elements clause, as "the knowing or intentional causation of bodily injury necessarily involves the use of physical force." *United States v. Castleman*, 572 U.S. 157, 169 (2014). *See also Johnson v. United States*, 559 U.S. 133, 140 (2010) (explaining that "the phrase 'physical force' means *violent* force — that is, force capable of causing physical pain or injury to another person").

1291 (8th Cir. 2019); *United States v. Gutierrez*, 876 F.3d 1254 (9th Cir. 2017) (per curiam); *Ovalles v. United States*, 905 F.3d 1300 (11th Cir. 2018) (attempted carjacking).[9]

This leaves the question whether *attempted* carjacking qualifies. It does. The courts of appeals to address the issue have persuasively held that an attempt to commit a crime that requires the use, attempted use, or threatened use of physical force is itself a "crime of violence" under Section 924(c)(3)(A) and similarly worded elements clause provisions. In *United States v. St. Hubert*, 918 F.3d 1174 (11th Cir. 2019), the majority put it simply: "Like completed Hobbs Act robbery, attempted Hobbs Act robbery qualifies as a crime of violence under § 924(c)(3)(A)'s use-of-force clause because that clause expressly includes 'attempted use' of force. Therefore, because the taking of property from a person against his will in the forcible manner required by § 1951(b)(1) necessarily includes the use, attempted use, or threatened use of physical force, then by extension the attempted taking of such property from a person in the same

---

[9] The appellate courts are likewise in unanimous agreement with the Third Circuit that bank robbery qualifies as a crime of violence under the elements clauses in Section 924(c) and like provisions. *See United States v. Ellison*, 866 F.3d 32 (1st Cir. 2017); *United States v. Evans*, 924 F.3d 21, 28-31 (2d Cir. 2019); *United States v. McNeal*, 818 F.3d 141, 153 (4th Cir. 2016); *United States v. Pervis*, 937 F.3d 546, 552-53 (5th Cir. 2019); *United States v. McBride*, 826 F.3d 293, 296 (6th Cir. 2016); *United States v. Williams*, 864 F.3d 826 (7th Cir. 2017); *Diaz v. United States*, 863 F.3d 781 (8th Cir. 2017); *United States v. Gutierrez*, 876 F.3d 1254, 1257 (9th Cir. 2017); *United States v. McCranie*, 889 F.3d 677 (10th Cir. 2018); *In re Sams*, 830 F.3d 1234, 1238-39 (11th Cir. 2016); *United States v. Carr*, 946 F.3d 598 (D.C. Cir. 2020).

forcible manner must also include at least the 'attempted use' of force." *Id.* at 351-53. In short, "the robber has attempted to use actual or threatened force because he has attempted to commit a crime that would be violent if completed." *Id.* at 353.

It is true that the substantial step establishing an attempted robbery might not itself (unlike here) involve force. For instance, it might involve the perpetrator gathering weapons and driving to the target location. But the 924(c) elements clause does not require the use of actual force; "attempted" or "threatened" force is sufficient. As Judge Hamilton wrote, in a statement relied upon in *St. Hubert*, "Even though the substantial step(s) may have fallen short of actual or threatened physical force, the criminal has, by definition, attempted to use or threaten[ed] physical force because he has attempted to commit a crime that would be violent if completed. That position fits comfortably within the language of the elements clause of the definition." *St. Hubert*, 909 F.3d at 352 (quoting *Morris v. United States*, 827 F.3d 696, 698-99 (7th Cir. 2016) (Hamilton, J. concurring)).

The full Seventh Circuit agrees. Holding that attempted murder, in violation of Illinois law, is a violent felony under the same elements clause in the Armed Career Criminal Act, the court held: "Given the statutory specification that an element of attempted force operates the same as an element of completed force, and the rule that conviction of attempt requires proof of intent to commit all elements of the completed crime, we now adopt Judge Hamilton's analysis as

the law of the circuit. When a substantive offense would be a violent felony under § 924(e) and similar statutes, an attempt to commit that offense also is a violent felony." *Hill v. United States*, 877 F.3d 717, 719 (7th Cir. 2017). *See also, e.g., United States v. Smith*, 957 F.3d 590, 594-95 (5th Cir. 2020); *Arellano Hernandez v. Lynch*, 831 F.3d 1127, 1132 (9th Cir. 2016) (a conviction for attempted threats is a crime of violence under the 18 U.S.C. § 16(a) elements clause; "We have 'generally found attempts to commit crimes of violence, enumerated or not, to be themselves crimes of violence.'") (citation omitted); *United States v. Dominguez*, 954 F.3d 1251, 1258-62 (9th Cir. 2020) (both Hobbs Act robbery and attempted Hobbs Act robbery are 924(c) crimes of violence); *United States v. McGuire*, 706 F.3d 1333, 1337 (11th Cir. 2013) (O'Connor, Ret. J.) (the crime of attempting to damage or destroy an aircraft in flight is a 924(c) crime of violence under the elements clause).

     For these reasons, the crime of attempted carjacking charged in Count Eight qualifies as a crime of violence under Section 924(c). The 2255 objection is without merit and should be denied.[10]

---

     [10] As Wright correctly states, the question of whether an attempt offense may qualify as a 924(c) crime of violence has been briefed to the Third Circuit, in *United States v. Walker*, No. 15-4062, which is scheduled for oral argument on October 5, 2020. Wright sensibly suggests that resolution of this matter may await the Third Circuit's decision in the Walker case.

Respectfully yours,

WILLIAM M. McSWAIN
United States Attorney


*/s Robert A. Zauzmer*
ROBERT A. ZAUZMER
Assistant United States Attorney
Chief of Appeals

## CERTIFICATE OF SERVICE

I hereby certify that this pleading has been served on the Filing User identified below through the Electronic Case Filing (ECF) system:

Daniel J. Auerbach, Esq.
Gamburg & Benedetto, LLC
1500 John F. Kennedy Blvd., Suite 1203
Philadelphia, PA 19102

*/s Robert A. Zauzmer*
ROBERT A. ZAUZMER
Assistant United States Attorney

Dated: August 29, 2020.